Oops. May it please the court, my name is Scott Martin. I represent Mr. Romero in this appeal of his alien transporting conviction to establish a violation of section 1324 a one a two, which was the statute of conviction. The government was first required to prove that the non citizen had entered or remained in the United States in violation of the law. That first element of the offense is the focus of our challenge, the sufficiency of the evidence supporting Mr. Romero's conviction. Our argument is that the government's evidence was insufficient to prove that the non citizen he transported, a woman named Ms. Alfaro, had actually entered or remained in the U.S. in violation of the law. At trial, the government did not identify what law Ms. Alfaro violated or present testimony or competent evidence explaining how she violated that law. And in any event, her unrefuted trial testimony about her forced entry into the United States and the absence of any proof that she had committed a civil violation by remaining in the United States, such as overstaying a visa, created at least a reasonable doubt which a rational juror could not ignore as to whether she did enter or remain in the United States in violation of the law. Now, Ms. Alfaro was the material witness and she was the government's witness and her unrefuted testimony was that she was forced by others to... Just so I understand, your single rightful shot argument, insufficient proof as to the first status element. That's correct. You're not saying there was instructional error as to that element. You're not saying there was insufficient proof of your client's state of mind. And you're not saying that the district court kept out any and all relevant evidence related to that first element. Your argument is just purely that the verdict can't stand, the jury couldn't have made the inference that she was there, correct? That's correct, Your Honor. That is our argument. She testified on direct that she was kidnapped and sold to a man named El Burro, and on three occasions, he was apprehended by immigration officials and sent back across the border to Mexico, where the men who had been holding her previously were waiting for her. On the third occasion, immigration officials did not apprehend her or the man who crossed her. She also testified that the men holding her had guns and headgear that covered their faces and the man who crossed her had sexually assaulted her. We don't know, but the jury could have disbelieved her testimony that everything was involuntary and forced. Well, Your Honor, on that, on the issue of whether she was credible or not, this was No, we just don't know what the jury did. Well, she was the government's only witness about the manner and nature of her illegal I know what she was. I'm just saying a witness gets on the stand and says three times I was pulled in here involuntarily. So that means your client couldn't have had. That means the government can't prove even though she had testimony, she said she was illegal and your client said she was illegal. I have a couple of responses to that, Your Honor. First, even if she was disbelieved, the government still had a burden of proving what her violation of law was. But before I get to that, I will say that the government did rely on her statement that she was here illegally, which we say was could have been mistaken. And your client's statement to the border person that she was here illegally. That's correct, Your Honor. The jury hears both the alleged smuggling victim and the defendant say status illegal and they can't infer? No, Your Honor. The government had not identified what law it was. She was violated. She's not an attorney. I know. And that's why I saw in your reply brief, you see the rule of law, you seem to say as to the first element is, and I'm quoting, I think that they would have to put on immigration officials or attorneys. But what circuit has ever said expert opinion is all that can count to prove in violation of specific law? And, Your Honor, that's not my argument. My argument, though, here is that there was, her testimony counts against it being an illegal person. But I'm saying when we review a jury verdict, they could have disbelieved any witness. I'm asking you, what is the proof you think the government has to give to prove the status? You're saying it's not the victim saying I was illegal. You're saying it's not the defendant admitting that the person he smuggled was illegal. So what is your statement as to future cases that government's got to prove status using what type of evidence? I would say that in a case such as this one, where you have testimony about a forced entry, which may not have been from the government's only witness about the manner of entry, that may mean that the entry was not illegal, that there should be other evidence from witnesses. No, you've been saying other evidence, and I'm saying how does the government prove it? Okay, witnesses, someone who said they saw her cross surreptitiously or paid a smuggler to cross. She said she was illegal. Your Honor, okay, so Agent Burkan, who was the agent at the immigration inspection checkpoint, he asked her if she was here illegally, which he thought, in his mind, inspected by a border officer at the border, but on redirect, he added that he was also attempting to find out if she had any sort of status like Mr. Romero had. She said that no, she's here illegally, but the question itself was confusing. Most importantly, there was no testimony that the agent- My difficulty is what's the rule of law for the future? You're saying other witnesses could say it, but what type of witnesses? Do they have to have some legal expertise, or could it just- That's one way to do it, Your Honor. You could have another way to do it would be to have witnesses- Let me rephrase my question. What is the case you would point us to that describes the type of proof you think is required? Cardonatus minaeus, which I've cited in my brief, is one example. Yeah, but Cardonatus minaeus, it was sufficient that on the bodies of the dead aliens, they determined they were from Honduras. In addition to that, there was testimony about how their surreptitious border crossing and how they had been guided across walkers across the Rio Grande River and were picked up at a pre-designated spot near the border, and the jury in that case could certainly have inferred based on the manner in which they had entered and picked up that they were here in violation of the law, that they had made an illegal entry. This case is quite different. We have the government's only witness about the manner of entry telling us that she was basically kidnapped and forced to come here. Very strong argument to the jury. You made that argument, correct? Correct. And so this case is quite different. And as we've argued in our brief, illegal entry is a general intent crime, and general intent crime is analogous to voluntary action by the defendant. So Ms. Alfaro's, the fact that her entry was not voluntary means she could not have had the men's rail. About all of this, when it seems clear that she remained in the United States and that she was illegal. She was maybe not committed a criminal act, but her presence in the United States was illegal under the facts. Your Honor, the only testimony about remaining in was from the government's witness, Agent Alfaro. Also, Agent Burkan agreed with Agent Alfaro that remaining in the U.S. illegally is basically when people are issued a visa or some sort of travel permit and they've stayed beyond what the time allows them to. It's a status violation. And we don't have that here, Your Honor. Well, you may not have that, but you have the fact that she was an alien, that she was not a citizen, that she had crossed, although against her will, into the United States, and that she had been released from the pressure on her that was imposed by these kidnappers, and she stayed. I mean, now technically, you may argue that's not a fair argument to her, but it is a legal argument, unless you can tell me to the contrary, that she did not belong here. She was committed a civil violation, if nothing else, and that she stayed here and remained here. And that that is clearly within the purview of the statutory language. Your Honor, that description of remaining was not presented to the jury. The government did not argue that. All the government argument in its closing was that just because she said she was here illegally, that's all they had to show. I will say, also, it's unclear to me, under the immigration section 1182A9B, that she was here illegally. Under that, of Title VIII, it's not clear that being kidnapped and forced across the border is always a violation. Your Honor, the statute under which she was convicted has the word remain, and that she did remain in violation of the law. That is, that she was an illegal alien, her presence was here, whether it was criminal or civil, is immaterial in terms of qualifying, under the statute, as a person who was committing a violation of immigration laws. Well, Your Honor, I disagree with that, because I think the government would need to... Well, first of all, for example, 1182A9B35, which I've cited in response to my 28J, provides an exception to the inadmissibility of aliens who have been previously removed and are now unlawfully present if a severe form of trafficking in persons is a central reason for the noncitizen's unlawful presence. The time essentially doesn't count as unlawful presence if they're trying to reapply for admission. And here... And, of course, I mean... But my point is that the statute doesn't necessarily treat this as... No, Your Honor. This is a statute dealing with inadmissibility of aliens. And here, one reason for her presence was sex trafficking. She testified that the kidnappers had made it clear to her that the value to them was the sex that she could provide for other people that bought her. That's... Was this argued to the jury? Roe 355. No, Your Honor, but the government did not, certainly did not make the argument that she remained... It was argued for the jury. It is not the statute under which she was convicted, so why should we consider it? Because, Your Honor, the statute in which she was convicted requires a determination. It requires evidence that the noncitizen did violate the law. And so... And it says she violates the law if she remains. And the question... If she did remain. Well, that's the question, Your Honor, is whether she remained or not. And our argument is that remaining is... The testimony... Remained. We know that. Well, physically, yes, she was... There's no question that she physically remained. But the... In violation of the law is... It modifies remaining. These questions are in the direction of their 28-J, of that Anderton... Correct. Correct. And that Anderton does stand for the proposition that the phrase, in violation of the law, could be a civil violation. My argument is that the government has to prove what that is. I mean, the government... If you're going to convict someone of transporting someone... But I thought our court said aliens who reside here without authorization are in violation of law. That's correct. And Ms. Alfaro did not reside here in violation of the law. She was arrested before she ever made it to Houston. So that case is not on point. I'm pointing... My argument is that if the government wants to convict someone under this statute and show that you've transported someone who has remained in violation of the law, you need to be able to show... Tell the jury and show the jury that this non-citizen did, in fact, remain in violation of the law. What is the statute? And what is the evidence that supports that? And that didn't happen here. Instead, in their closing argument, they just pointed out that when she... Basically, when she was asked during her immigration inspection whether she's here legally, she said no. Which, again, as I said, there's no... Why does it matter what the lawyers argued if, in fact, the evidence shows on appeal that she was, in fact, remained in violation of law? Even if the lawyers didn't argue that, and the evidence shows that, does it make any difference if the lawyers didn't argue it? Well, I think, for one, I don't think that the government did show that she remained in violation of the law because, like I said, there are exceptions to the immigration... Immigration statutes are complicated, and I've pointed out one exception to you. And when... Your theory of the case that you presented to the jury is that she was kidnapped. She's a true victim, and your client was a good Samaritan. Correct. Okay. Did you ask for a good Samaritan instruction? No. No, we did not ask for a good... Other circuits allow that. I don't think we've ever said it doesn't exist. Right. Well, we also made, in our Rule 29 Motion for Judgment of Acquittal, this argument that we're making here, that the first element was not satisfied. I know, but you aren't pressing the argument that in multiple other circuits is the one that addresses this exact back scenario, that your client picked up someone he thought was a victim. He had no intent to promote smuggling. He was getting someone to a hospital. He was getting someone to safety. That was the theory of the case. You preserved it, but you aren't arguing that... Our argument on appeal is focused on the first element, not the intent. And that's probably because he lied in the truck, saying that she was his wife. So be heartful. Well, there were some factual problems with what happened in the truck at the checkpoint with the presentation of the merit certificate. None of that changes the argument on the first element, what his state of mind is. The government has to prove as a matter of fact that this non-citizen entered or remained in violation of the law, and they didn't. They didn't. Thank you. I'm sorry. Good morning, and may it please the court. Catherine Pick on behalf of the United States. Your honors, this is not an exceptional case where the jury got it wrong. The jury got it right. Ample evidence supports Mr. Romero's conviction. I mean, it's... You know, it defies... We used to have a judge on this court that said, what would the borrower in Ville Platt, Louisiana, say about it? And that is, here, the good Samaritan goes to prison. That doesn't sound like what the law should be endorsing. No, your honor. And here, Mr. Romero committed a crime where he transported an illegal alien, and he picked her up, and he was taking her to Houston, and he was going to find her shelter, and he was going to find her a job, and that violates the law. Well, that's your position. But when you say it's not an exceptional case, it really sort of is, because the government's key witness was the alien. And quite remarkably, the government elicited her sworn testimony, so you can't be sort of gainsaying it now, that she was kidnapped. She was not here voluntarily against the law. That was the government's evidence. So you agree with me, it's actually not open to us to say, oh no, she was here voluntarily as an illegal alien, because if that's true, then the government probably withheld evidence to impeach their own witness, which you wouldn't have done. So, do you agree with me, here's the question, that we have to accept that your witness, the victim, was here throughout, entering and remaining involuntarily? No, your honor, we don't have to accept that. But that was the government's elicited testimony, right? Yes. Ms. Alfaro testified that she was brought here by smugglers, and she tried to enter the United States three times. The third time, she was able to get, the smugglers took her to a stash house. Now, that was her story. Well, it was the story you drew out from your witness. So you propounded it. It's a correct story, according to the government. It is the only story. It's the only story, yes, your honor. How can we sustain? How can we say? I thought an alien that's brought over involuntarily and here involuntarily, how does that ever qualify for the first element? Well, it does, your honor, because whether you're brought in voluntarily doesn't absolve or doesn't set aside the fact that she's here illegally. She didn't enter through a designated port of entry. And when she... Because the kidnappers dragged her across. Exactly, your honor. And that doesn't change the fact, though, that she didn't go through a designated port of entry. She didn't, after she left the stash house, didn't call the police. She called Mr. Romero to come pick her up. When they got to the checkpoint, she lied about being a United States citizen and that she resided in... Well, I thought you said I'm not. I thought he lied, but she didn't. She admitted. She, at first, I believe, your honor, that she admitted that... She's your witness. Were you impeaching her testimony or not? No, your honor. She was our witness, and she was our witness to show that, yes, she came here illegally. And the jury was free to believe her or not, whether she was brought here involuntarily. You know, based on the jury's verdict, I don't know if they could have believed that, and maybe they didn't, your honor. Mr. Romero is convicted because Ms. Alfaro did illegally enter. And even if maybe this court says, okay, well, she involuntarily entered, will we still prove that she remained in the United States in violation of the law? Because Mr. Romero picked her up from the stash house, and he drove her to Houston, or was attempting to drive her to Houston, and was going to find her lodging and... Just so I understand, as the attorney on the record in this case, there's nothing in the government's possession that suggests she came involuntarily and that the stories he said under oath is untrue. Right, your honor. The story that she said, this is her story. We don't have any other evidence to corroborate. Would you agree that your best case to support this conviction is that she actually remained and didn't immediately call? Yes, your honor. I think, well, I think the evidence that we proved, beyond reasonable doubt, was that she remained in the United States in violation of the law. And we proved that through her testimony and through Mr. Romero's, Miranda's... You know, we focus on, we're focusing totally on this woman. Yes. She is not the defendant. Exactly, your honor. He has not been convicted of anything. Right. He has been. Yes, he has been. And so whether she has this meritorious defense of, you know, should she be... And the question is whether, to the extent that he had knowledge of her background, the background of her presence in the United States, to say that he himself was culpable. Yes, and we have evidence, your honor. We have his Miranda statements where he said, yes, I knew she was illegal and I was taking her to Houston and I brought my wife and their marriage certificate to pass it off as his wife. And you heard him. He's not challenging the second element of what he thought. They did below good Samaritan theory under a lot of established law, but because he lied, as you point out, but they are challenging the first element. And what exactly, any pattern instruction anywhere in the country, what do you think you've got to prove to prove her status being here in violation of law? What's the best case you would tell us to look to? I would say Anderton, your honor. She's here with... What's the best case, sorry? The United States versus Anderton. The one, U-28 Jade? That always worries me when the government says the best case is not a case they put in their brief. It's the one they found afterwards. But it's dated 2018. Why would we even allow you to file something as an ostensible new development before oral argument if it predates your brief? They never had a response time. Well, your honor, and I... So your best case is the one you filed in a 28-J letter before oral argument, but it predates the brief? What's the best case you cite in your brief as to the proof you've got to show for that first element in the brief? I believe it's United... In my brief, your honor, I believe it's United States versus Barbie, and I don't have the citation... But Barbie was... Why are we interested in whether you cited it in your brief or in the 28-J letter? If this case fits properly into that and that Anderton states the law, then it seems to me it's irrespective of whether you cited it earlier or in your brief or wherever you cited it. That's the law. And I don't... Maybe the argument that you make that it is the law would be precluded, but... That's a soft question. You want to say yes? Yes. Okay. You're relying on... Am I right or wrong? And my questions are forceful, but that's what you want because you're here and prepared and it's an important case for both sides. Yes. You say Barbie is your best case. Am I wrong that that's a second-element case? That was a state-of-mind case. I don't find many cases on this first element. And that's true, Your Honor, and that's maybe why we're here today is because there's not much case law on this first element. Now, we use the regular Fifth Circuit pattern jury charge in this case and we proved that this alien was brought here and we put testimony that she was illegally, voluntarily, and then we also had her testimony that she remained here in the United States in violation of the law. And we proved that. We had her testimony. We had the Border Patrol agent's testimony and we had Mr. Romero's, Miranda Borney's statements to the Border Patrol. All of this evidence supports the first element and the jury got it right and they convicted him, Your Honor. And the jury was free to choose among the reasonable constructions of the evidence and we proved this, Your Honor. We proved this case. And maybe, as you said, an exceptional where we had the undocumented alien testify, but I believe that there are other cases out there who also had the undocumented alien's testimony. And so here, Your Honor, this court can affirm and should affirm Mr. Romero's convictions based on the evidence. There was no evidence she was getting financial gain? No, Your Honor. Or that she had ties to the smugglers? No, Your Honor. Or did she know she was going? No, she was... Sounds like she really was a kidnap victim. Right, Your Honor. And yes, and it does sound like that and the jury heard her testimony and still they considered the evidence and they correctly found that she was here remaining. Did the government contest whether she was kidnapped or not? No, Your Honor, and... So, I mean, for the purposes of this appeal, we can assume that she was kidnapped? Yes, Your Honor. I think, yes, you could assume that she... And I guess assume she was sexually abused and then someone picks her up to get her treatment and he's going to jail as a smuggler? He's not going to jail. Well... He's going to jail. Yes, sorry, excuse me. Yes, Your Honor. I think he's out. He got four months? He got four months, yes. And he's gone. And, you know, they made decisions of instead of, you know, they picked her up at the stash house and instead of calling the police, taking her to, you know, the border checkpoint in McAllen, they went to McDonald's, got some food, and started driving to Houston. And I looked it up and from the McAllen-Brownsville area to the Sarita, Texas checkpoint is 106 miles. And in those hour and... I believe it's an hour and 38 minute drive. Not once did they call the police when they got to the checkpoint. Not once did they say, hey, I have a... You know, she's been sexually abused. We need to, you know, here is the address that I found her at the stash house. Okay, you make those statements. Then what is the point you want us to consider as a result of the statements that you just made? That the evidence supports that she remained in the United States in violation of the law because they took actions for her to remain here and she didn't have proper documentation. She's without authorization to be here in the United States and that violates the law, Your Honors. And we proved that. And then he goes to jail. The good Samaritan goes to jail. Well, Your Honor, as Judge Higginson pointed out, they didn't request a good Samaritan. And, you know, the jury heard this story. They heard... The defense made these arguments and they considered these arguments and they convicted... You've got a jury verdict, proper instruction. It was all argued. Exactly. Let me ask you a legal question and I don't think I have other questions. But proving status, especially not the defendant's status, is difficult. Correct, Your Honor. You're familiar with Title 18, 922G. The really common you've got to prove someone's a felon then they can't possess a gun. Yes, Your Honor. Would it suffice if the evidence was some government witness says yes, I know Joey, the defendant, was a felon but the record proved conclusively not a felon. That couldn't support a conviction. Correct? I wouldn't think so, Your Honor. I think you would have to have... So I think that's sort of where they're here which is two people said she was illegal but the government never gave any exhibit or expert opinion to say well, yeah, she's colloquially illegal but she didn't know that because she was brought here she actually wasn't illegal. I guess they made that argument to the jury. Would that be your answer or do you think I'm wrong legally? Well, I think, Your Honor, when you're trying to prove someone you know, the jury hears this testimony and this is a jury in Corpus Christi and they're familiar with immigration and transportation cases and when someone says yes, I came here, I don't have any documents I was coming from Honduras I was smuggled I'm here illegally then yes, I think that okay, well, there's no documentation to show that she has documentation to be here in the United States legally. What argument did the government make that she was here illegally? Did they say she was here illegally because she was in violation of civil law or criminal law? What was their argument that she was in violation of law? Their argument, Your Honor, and they relied on the testimony of the Border Patrol agent who said, you know, my job is to figure out if someone is here legally and if they have the proper documentation and we made those arguments also through the testimony of Mrs. Alfaro saying I'm here illegally I entered the United States and I'm here illegally so that was our evidence and we also have Mr. Romero's statement saying yes, I knew she was here illegally. Well, did the government argue that she was herself a criminal because she had criminally violated the law? No, Your Honor. No, there was no test there was no argument that she's a criminal it was just that she is an alien for purposes of that her mere presence was a violation of the law. Yes, Your Honor. And was there any argument about whether that was civil or criminal? No, Your Honor. I don't think there was a specific mention of oh, well, it's, you know, a criminal violation or a civil violation because the jury instructions I believe just say it must be a violation of the law. So there was no mention of criminal or civil. Supposing counsel said his best case was Cardenas misdemeanors do you want to speak to that? Your Honor, that was a case where the illegal alien had a work permit so I believe they argued it was not a crime to transport him but this case but this court disagreed and noted that entry into the U.S. is unlawful when it occurs so I don't think that's necessarily on point or, you know, would be a best case and these facts are different where Ms. Alfaro didn't have any authorization to be here. She had no work permit which also brings me to I just want to address defense counsel he refers to 8 U.S.C. 1182 where there's a victim of severe form of trafficking that doesn't apply in this case, Your Honor because in that code it requires any alien who is unlawfully present in the United States for a period of more than 180 days but less than a year and that doesn't apply in this instance, Your Honor. All of the evidence that the government proved at trial supports Mr. Romero's conviction and if this court has no further questions I will rely on my briefings to use the remaining of my time. Thank you. Thank you. Your Honor, Judge Jolly had a question about the government's argument it was it's at row 422-423 it's it basically summed up is she told it said first we had to prove the alien had entered or remained in the United States in violation of the law you recall Ms. Alfaro was the alien and she told Agent Vercan that she was here illegally she told Hughes that she was here illegally and she testified yesterday she said that she told the defendant that she was here illegally so that was their evidence that she's here illegally because she said so um nothing about uh no work permit as uh the government just said nothing about no testimony from anyone who said they did How was the instruction the court gave with respect to it was the it was the pattern uh instruction um let me see here in violation first that an alien had entered or remained in the United States in violation of the law that was it statutory I understand in violation of the law had entered or remained in the United States in violation of the law now the government Agent Alfaro was the government's witness too and uh he thought he testified he thought illegally present means no documents to be legally here but he admitted that he could name no law that is being violated by Ms. Alfaro being here with no documents um and then he also then he agreed Agent Alfaro did with defense counsel on cross-examination that remaining in the U.S. illegally is basically when people are issued a visa or some sort of travel permit and they've stayed beyond what the time allows them to his testimony is consistent with what the Ninth Circuit has said in the United States for Skinner I mean I'm sorry I'm asking this question was she here was her presence legal that that has not I'm asking you uh that has not been proven that it was illegal or I'm asking you was it legal uh I I again I'm not I would have to see under the it certainly wasn't a crime and whether it was a civil violation would depend on what had under the immigration laws we know her presence here was not legal the jury it was not it was it was not proven to the jury uh that her that her presence was a violation of any criminal or civil law uh the Ninth Circuit I'm asking you that's the question I mean you're kind of well it's it's again it has not been proven um unlike the Ninth Circuit has said that unlike illegal uh illegal entry in the United States which is a crime under section 1325 illegal presence is not a crime a migrant who is part of   being you know I      do with a criminal case which was a criminal case it was very well understood so it was a criminal case which was very funny something that represented a number of other and plays a role in the mystery of immigration in the United States. He didn't testify that she overstayed  visa. What's the evidence? The government says she was here illegally because she said so. She's not a lawyer. There was no evidence that she understands the immigration laws. The questions asked were ambiguous. Are you here illegally? Is it our argument it is insufficient evidence to convict someone based on this testimony relating to the non-citizen  to the agent's questions. They have to prove something more to prove it beyond a reasonable doubt. Other witnesses would be something more? Who would have the capacity? Say she had paid someone to smuggle her across the border and you had a witness like in Cardenas where you had witnesses who were part of the smuggling operation and they could testify about it. Thank you, your honors.